# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAY EVANS,
Plaintiff,

v.

CHICHESTER SCHOOL DISTRICT et al.,
Defendants.

: CIVIL ACTION
:
: NO. 07-0072

## Memorandum and Order

YOHN, J.　　　　　　　　　　　　　　　　　　　　　　　October 15, 2008

Presently before the court is defendant Pennsylvania Office of Dispute Resolution's ("ODR")[1] motion for attorney fees pursuant to 42 U.S.C. § 1988; section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b); and 28 U.S.C. § 1927 and motion for sanctions under Federal Rule of Civil Procedure 11. For the reasons discussed below, ODR's motions will be denied.

## I.　Procedural Background

On January 5, 2007, Kay Evans filed a complaint against multiple defendants, including ODR. Evans's lawsuit stemmed from a due process hearing held on January 7, 2005 to address the educational needs of one of her sons. She asserted the following claims against ODR: (1) a retaliation claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) a First Amendment retaliation claim under 42 U.S.C. § 1983; (3) a claim pursuant to 42 U.S.C. §

---

[1] Counsel for ODR continues to assert that ODR is not a separate legal entity and the proper party to this lawsuit was the Lancaster Lebanon Intermediate Unit.

1

1985(3) for conspiring to violate her equal protection rights; and (4) a 42 U.S.C. § 1981 claim for violating her right to contract with her attorney. Evans also sought a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that, inter alia, ODR does not conduct fair and impartial due process hearings when it holds hearings on Chichester School District's property.

All of the defendants filed motions to dismiss Evan's complaint, and the court held oral argument on the motions on December 13, 2007. At oral argument, Evans's counsel agreed to withdraw all claims against ODR. Accordingly, in the January 10, 2008 Memorandum and Order granting ODR's motion to dismiss, the court dismissed all claims against ODR with prejudice and without discussing any of the merits of Evans's allegations against ODR. *See Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 523 n.2 (E.D. Pa. 2008) ("At oral argument, Evans's counsel agreed to withdraw all claims against ODR. Therefore, ODR's motion to dismiss will be granted without discussion, all claims against ODR will be dismissed with prejudice, and ODR will be dismissed as a party to this lawsuit."); *id.* at 540 ("The Pennsylvania Office of Dispute Resolution's motion to dismiss is GRANTED. Pursuant to plaintiff's agreement at oral argument, all claims against this defendant are dismissed with prejudice, and the Pennsylvania Office of Dispute Resolution is DISMISSED as a party to this lawsuit.").

On February 5, 2008, ODR filed the current motion for attorney fees. ODR filed a separate motion for Rule 11 sanctions in the form of attorney fees on March 28, 2008.

II.     **Attorney Fees Under 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b)**

ODR seeks attorney fees under 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections 1981, . . . 1983, [and] 1985 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's

2

fee as part of the costs . . . ." 42 U.S.C. 1988(b). ODR also seeks attorney fees under the fee-shifting provision of the Rehabilitation Act, 29 U.S.C. § 794a(b), which similarly provides: "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[2]

A prevailing party may either be a plaintiff or a defendant; however, the standard for awarding attorney fees to prevailing defendants is more stringent than the standard for awarding fees to prevailing plaintiffs. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). In permitting attorney fees to be assessed against plaintiffs, Congress was endeavoring "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420. Accordingly, a defendant is not entitled to attorney fees unless it is a prevailing party and the "court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422.

According to the Supreme Court, "'the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'" *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-

---

[2] Because of the similarities between the fee-shifting provisions of § 1988 and Title VII, courts have applied the same standards to both provisions and have concluded that cases interpreting one statute are applicable to cases interpreting the other. *See Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 n.6 (3d Cir. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). Thus, this section addresses cases that have interpreted § 1988 and cases that have interpreted Title VII. Additionally, the language of the fee-shifting provision in the Rehabilitation Act is virtually identical to the language of the fee-shifting provision of § 1988 and Title VII, so the court will use the same case law and analysis courts have employed when addressing § 1988 and Title VII when addressing ODR's entitlement to attorney fees under the Rehabilitation Act.

3

93 (1989)). The Supreme Court addressed what constitutes the requisite material alteration of the legal relationship between the parties in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Services*, 532 U.S. 598 (2001). The Court emphasized that in order for fees to be awarded to the prevailing party, there must be some type of "court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Id.* at 604 (alterations in original) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-93). It also noted the importance of its prior finding that Congress intended for a party to prevail on the merits of some of the claims in order to be considered a prevailing party for purposes of an attorney fee award. *Id.* at 603. The Court concluded that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-93. On the other hand, unless its terms are incorporated into the court's order of dismissal, a private settlement agreement does not create the requisite material alteration of the parties' legal relationship because it does not entail the requisite judicial oversight. *Id.* at 604 n.7. Thus, a party must have been provided some relief from the court in order to be a prevailing party entitled to attorney fees, and there cannot be an award of attorney fees where there is no judicially sanctioned change in the legal relationship of the parties. *Id.* at 604-05.

The Third Circuit has not directly ruled on the issue of whether a defendant is a prevailing party under the civil rights fee-shifting statutes when the plaintiff has voluntarily withdrawn all the claims against the defendant.[3] A recent case decided in the Eastern District of

---

[3] The cases the parties primarily rely on are not useful in reaching a conclusion as to whether ODR is a prevailing party entitled to attorney fees. ODR relies on two pre-*Buckhannon* cases to support its claim that it is a prevailing party entitled to attorney fees. *See Cantrell v.*

4

Pennsylvania determined that this type of defendant is not a prevailing party under *Buckhannon*. In *Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, No. 05-0404, 2006 WL 709799 (E.D. Pa. Mar. 13, 2006), the defendant sought attorney fees for defending a claim under the Americans with Disabilities Act after the plaintiff had voluntarily stipulated to a dismissal of that claim. The court concluded that under *Buckhannon*, the defendant did not "meet the threshold requirement of being a 'prevailing party' because [the plaintiff's] voluntary stipulation of dismissal did not require the judicial imprimatur necessary for monetary recoupment." *Id.* at *4.

Evans's voluntary withdrawal of all claims against ODR during the hearing on the motions to dismiss is akin to a voluntary stipulation of dismiss, and the *Fassl* court's reasoning is persuasive. Because Evans voluntarily withdrew all of her claims against ODR before there was

---

*Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 456 (10th Cir. 1995) (determining "that a defendant is a prevailing party under [Federal] Rule [of Civil Procedure] 54 when, in circumstances not involving settlement, the plaintiff dismisses its case against the defendant, whether the dismissal is with or without prejudice"); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (11th Cir. 1985) (concluding that when "there is a dismissal of an action, even where such dismissal is voluntary and without prejudice, the defendant is the prevailing party" (quotation marks and citation omitted)). Neither case arose in the context of motions to dismiss; rather, both arose after the court had granted partial summary judgment to the defendants and there was evidence on the record regarding the merits of the plaintiffs' allegations. Also, neither case arose in the context of the civil rights fee-shifting statutes; therefore, they did not address the more stringent standard that applies to defendants when determining whether a defendant is a prevailing party entitled to attorney fees in the context of civil rights claims. Thus, the cases are not persuasive here.

Evans relies on another pre-*Buckhannon* case to support her position that ODR is not a prevailing party because she voluntarily withdrew her claims against ODR and there was never any determination on the merits of her claims. *See Marquart v. Lodge 837, Int'l Assoc. of Machinists and Aerospace Workers*, 26 F.3d 842, 848-52 (8th Cir. 1994) (analyzing the policy and equitable considerations governing the civil rights fee-shifting statutes and concluding that when there is no determination on the merits because the plaintiff has voluntarily withdrawn the claims, the defendant is not a "prevailing party" under the fee-shifting statutes). Although *Marquart*'s reasoning may be persuasive, it was decided prior to *Buckhannon* and did not address whether there had been a judicially sanctioned change in the parties' legal relationship.

5

a judicially ordered change in the legal relationship between the parties, ODR is not a prevailing party under § 1988.[4] For these same reasons, ODR is also not a prevailing party under § 794a(b). Because ODR has not met the threshold requirement of being a prevailing party, the court does not have to determine whether Evans's claims were frivolous, unreasonable, or groundless. ODR's motion for attorney fees under § 1988 and under § 794a(b) will be denied accordingly.

### III. Attorney Fees Under 28 U.S.C. § 1927

ODR has also moved for attorney fees under the federal cost statute, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Although § 1927 allows courts to sanction attorneys for misconduct, "the power to assess costs on an attorney in a given case is a power which 'courts should exercise only in instances of a serious and studied disregard for the orderly process of justice.'" *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (quoting *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)). "'As is evident from the text of the statute, § 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

---

[4] Contrary to ODR's assertions, the court's granting of ODR's motion to dismiss and dismissing ODR as a party to the lawsuit was not a judicial sanctioning of a material change in the legal relationship of the parties as described by *Buckhannon*; the order was not based on the court's judgment of the claims or the court's independent ordering of a change in the legal relationship between the parties. Rather, it was the implementation of Evans's withdrawal of all claims against ODR.

*Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (quoting *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3rd Cir. 1989)).

The Third Circuit requires a finding of bad faith before imposing fees under § 1927: "before attorneys' fees and costs may be imposed under section 1927, there must be a finding of willful bad faith on the part of the offending attorney." *Ford*, 790 F.2d at 347 (citing *Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985)); *see also Baker*, 764 F.2d at 208 (concluding "that a bad faith finding is required as a precondition to the imposition of attorneys' fees under section 1927"). The Third Circuit has also provided guidance as to the type of conduct that constitutes the bad faith required under § 1927: "'Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *In re Prudential Ins. Co.*, 278 F.3d at 188 (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). On the other hand, "misunderstanding, bad judgment, or well-intentioned zeal" do not constitute bad faith. *LaSalle Nat'l Bank v. First Conn. Holding Group, LLC.*, 287 F.3d 279, 289 (3d Cir. 2002).

ODR argues that it is entitled to attorney fees because Evans's attorneys, Carol Herring and Bill McLaughlin, vexatiously multiplied the proceedings when they did not amend the complaint after ODR filed the transcript of the January 7, 2005 proceedings along with its motion to dismiss. ODR contends that it is entitled to attorney fees under § 1927 because it had to defend its motion to dismiss at a hearing.[5]

---

[5] The district court cases ODR relies on to support its argument are not persuasive. In *Cohen v. Oasin*, 863 F. Supp. 225, 231 (E.D. Pa. 1994), the court denied the defendant's motion for attorney fees under § 1927, concluding that "while the plaintiff's motions have lacked merit,

Herring and McLaughlin's conduct of withdrawing claims during oral argument rather than immediately after ODR filed its motion to dismiss is not the type of conduct that § 1927 intended to sanction. "Courts have generally invoked the section either to punish knowingly baseless contentions that are made for an ulterior purpose, which is virtually always to harass or delay, . . . or to punish repeated instances of flagrantly improper conduct, often in disregard of the court's warnings." *Baker*, 764 F.2d at 223 (citations omitted). Furthermore, "'[t]o justify the

---

there is nothing to suggest that the motions were filed primarily for oppressive purposes. Since the record fails to reveal any bad faith on the part of the plaintiff, defendant's motion for costs and attorneys' fees is denied." Similarly, there is nothing here to suggest that Herring and McLaughlin did not withdraw the claims until oral argument primarily for oppressive purposes, and ODR has pointed to nothing in the record before the court that demonstrates bad faith.

In *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 458 (D.N.J. 2002), the court imposed sanctions under § 1927 because the attorney did not withdraw an emotional damages claim (a claim the court concluded the attorney did not have a good faith basis for seeking) until the middle of the trial, after the plaintiff had already testified to aspects of the claim. In reaching this conclusion, the court focused on the attorney's fad faith in pursuing the claim, not in filing the claim in the first place. Here, Herring and McLaughlin withdrew all claims against ODR at the motion to dismiss stage, not in the middle of trial. Thus, Herring and McLaughlin did not pursue the claim in the same manner in which the *Alphonso* plaintiff's attorney pursued the claim, and *Alphonso* is not applicable.

Similarly, in *Murphy v. Housing Authority & Urban Redevelopment Agency*, 158 F. Supp. 2d 438 (D.N.J. 2001), the court imposed attorney fees, not at the motion to dismiss stage, but after discovery had been conducted and the defendant had filed a motion for summary judgment. The court reasoned: "Given the paucity, indeed, the dearth, of any evidence whatsoever in the summary judgment record supporting Plaintiff's claims of reverse discrimination on the basis of race and sex, I conclude that [the plaintiff's attorney's] continued pursuit of this litigation constituted unreasonable and vexatious conduct which so multiplied the proceedings in this case as to constitute bad faith and merit the award of counsel fees and costs under 28 U.S.C. § 1927." *Id.* at 450. Because *Murphy* relied on the summary judgment record to determine there was no evidence to support continued prosecution of the claim to that point, it is not relevant here, where the claim was withdrawn during the motion to dismiss stage. Furthermore, ODR blatantly ignored the *Murphy* court's reliance on the fact that the attorney acted vexatiously by prosecuting the claim until the summary judgment stage. When ODR used the above quote from *Murphy* to support its argument, it left out the portion of the quote that said the court was relying on the dearth of evidence *in the summary judgment record;* ODR used ellipses instead of this language.

imposition of excess costs of litigation upon an attorney[,] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.'" *Id.* at 208 (quoting *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982)). ODR has pointed to no evidence to show that the purpose of waiting until oral argument to withdraw the claims against it was to harass or delay, nor has ODR pointed to repeated instances of flagrantly improper conduct by Herring and McLaughlin. Rather than vexatiously multiply the proceedings against ODR, Herring and McLaughlin agreed to discontinue the proceedings against ODR. This conduct is not the type of conduct that constitutes sanctionable, bad faith conduct under § 1927, and ODR's motion for attorney fees under the federal cost statue will be denied.

### IV. Motion for Rule 11 Sanctions

On March 28, 2008, ODR filed a separate motion for attorney fees under Rule 11, which governs representations made to the court. ODR contends that Herring and McLaughlin violated Rule 11(b) by inflating, misrepresenting, and creating the factual allegations in the Complaint.

The applicable provision of Rule 11(b) provides that when an attorney presents the court with a pleading, written motion, or other paper, the "attorney certifies . . . that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). This rule applies if the attorney signs, files, submits, or later advocates the pleading at issue. Fed. R. Civ. P. 11(b).

If Rule 11(b) is violated by an opposing party's counsel, the litigant can file a motion for

9

sanctions under 11(c). Under the terms of 11(c), if a litigant contends that opposing counsel violated Rule 11(b), the litigant must first draft the motion for sanctions and serve it on the opposing party as required by Rule 5. Fed. R. Civ. P. 11(c)(2). The opposing party then has twenty-one days to correct the challenged paper, claim, defense, contention, or denial. *Id.* If the challenged paper is not corrected during the twenty-one day safe harbor period, the litigant may then file the motion in court. *Id.*

When enacting the 1993 amendments that added the safe harbor provision, the Advisory Committee explained the timing requirement for filing a motion for sanctions:

> Ordinarily, the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the "safe harbor" provisions . . ., a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Fed. R. Civ. P. 11 Advisory Committee's note.[6] ODR's motion violates the safe harbor provision because it was not filed until after Herring and McLaughlin voluntarily withdrew all claims against ODR and the court dismissed ODR as a party to the lawsuit; by the time ODR filed its motion for sanctions, there was nothing for Herring or McLaughlin to amend or correct

---

[6] ODR relies on *Scherling Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490 (3d Cir. 1989) to argue that its motion is not untimely. In *Scherling*, the Third Circuit held that the district court had jurisdiction to decide a Rule 11 motion after the plaintiffs had voluntarily withdrawn the claims. *Scherling* was decided in 1989, prior to the 1993 amendments to Rule 11 that added the twenty-one day safe harbor provision. Therefore, it is not applicable under the new version of the rule. *Accord Hockley by Hockley v. Shan Enters, Ltd.*, 19 F. Supp. 2d 235, 239-41 (D.N.J. 1998). Although adopted in 1988, the Third Circuit's supervisory rule which requires "that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment," *Mary Ann Pensiero, Inc. v. Lingle,* 847 F2.d 90, 100 (3d Cir. 1988), is more in line with the 1993 amendments to Rule 11.

under Rule 11(c). *Accord Fassl*, 2006 WL 709799, at *5.[7] Because ODR violated the safe harbor provision, ODR's motion for sanctions will be denied.[8]

## V.    Conclusion

ODR's motion for attorney fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b) will be denied because it is not a "prevailing party" under those statutes. ODR's motion for attorney fees under 28 U.S.C. § 1927 will also be denied because it has not shown that Herring and McLaughlin acted in bad faith in vexatiously multiplying the proceedings. Finally, ODR's motion for sanctions under Rule 11 will be denied because it violated the safe harbor provisions of Rule 11(c)(2). An appropriate order follows.

---

[7] The facts surrounding the sending of the safe harbor letter further demonstrate that ODR has not complied with the safe harbor provision. Neither party has given the date on which ODR sent the safe harbor letter to Evans's counsel, and neither party has provided the court with a copy of this letter. McLaughlin asserts that the letter was not sent until after the court's January 10, 2008 Memorandum and Order, which noted that Evans had voluntarily withdrawn all of the claims against ODR and dismissed ODR as a party to the lawsuit. He provided a copy of a letter dated January 11, 2008 that he sent to Andria Saia, ODR's attorney. This letter informed Saia that McLaughlin received the Rule 11 safe harbor letter on February 8, 2008 and noted that Saia had not informed him which document could be corrected, amended, or withdrawn, which McLaughlin characterized as problematic because ODR had already been dismissed from the case. McLaughlin could not have sent a letter in January 2008 informing Saia that he received a letter in February 2008. Thus, it is not clear when Saia sent the Rule 11 notice. However, regardless of whether Saia sent the letter in January or February, the letter would have been too late for purposes of the Rule 11 safe harbor period because Herring and McLaughlin withdrew all claims against ODR at oral argument on December 13, 2007, and even an informal withdrawal of the challenged claims suffices. *See* Fed. R. Civ. P. 11 Advisory Committee's notes.

[8] McLaughlin contends that because ODR did not follow the proper procedures in filing its motion for sanctions, he is the prevailing party under 11(c) and is entitled to fees earned for preparing the defense to the motion for sanctions. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."). McLaughlin asks for $1500, but he does not provide a basis for this monetary request. The court is not required to award attorney fees under Rule 11(c)(2), and this case does not so warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAY EVANS,<br>Plaintiff,<br><br>v.<br><br>CHICHESTER SCHOOL DISTRICT et al.,<br>Defendants. | :<br>:<br>:<br>:  CIVIL ACTION<br>:<br>:  NO. 07-0072<br>:<br>:<br>:<br>: |

## Order

AND NOW on this __15__ day of October 2008, upon careful consideration of defendant Pennsylvania Office of Dispute Resolution's Motion for Attorney Fees (Doc. No. 33) and plaintiff's response thereto, and upon careful consideration of defendant Pennsylvania Office of Dispute Resolution's Motion for Sanctions (Doc. No. 39) and plaintiff's attorneys' responses thereto, IT IS HEREBY ORDERED that the motions are DENIED.

_____
William H. Yohn Jr., Judge